WELCH, J.
 

 [ 2Cynthia Bridges, in her capacity as the Secretary of the Department of Revenue for the State of Louisiana (“DOR”) challenges a judgment of the trial court affirming and upholding a decision of the Board of Tax Appeals (“Board”). The decision of the Board was primarily in favor of the taxpayer, The Offshore Drilling Company (“TODCO”), formerly R & B Falcon Drilling USA, Inc. (“R & B”), and essentially determined that certain sales, services or transactions during the audit period (January 1, 1997 through December 31, 1999) were- exempt or excluded from sales and use taxes. For reasons that follow, we vacate the judgment of the trial court and remand to the Board, with instructions.
 

 I. FACTUAL AND PROCEDURAL HISTORY
 

 R & B was a contractor for drilling oil and gas wells and operated primarily in the Gulf of Mexico in state, federal, and international waters. The DOR conducted a sales and use tax audit of a particular division of R & B (referred to as Shallow Water Offshore Operations or the Brous-sard Division) for the time period of January 1, 1997 through December 31, 1999. Based on the audit, on December 22, 2003, the DOR issued a notice of assessment to TODCO, formerly R & B, showing: taxes due in the amount of $447,864.03, interest to February 20, 2004 in the amount of $364,401.41, delinquent penalty in the amount of $109,383.02, a credit for payment in the amount $100,151.09, with the total amount of $821,497.37 due and payable.
 
 [1]
 
 In response, on January 8, 2004,
 
 *740
 
 TODCO filed, with the Board, a petition for redetermination of sales and use tax assessment, claiming that La. R.S. 47:305.1(B) provided an exemption from sales and use taxes for purchases of materials or supplies operating in foreign or interstate coastwise commerce; that it operates drilling vessels that provide drilling services to | ¡¡operators in Louisiana, Texas, Mississippi, and Alabama, both in and outside of state waters; that it utilizes supplies and materials to manpower these drilling vessels; that its drilling vessels have a need for repair as they are in continuous service; that its drilling vessels are of a fifty tons displacement or better; and that its workers are provided meals while working on these drilling vessels. As such, it claimed that all meals, supplies, equipment, and repairs, including drill pipe, (which were the subject of the audit) were supplies and materials used or consumed during the operation of a vessel of fifty tons displacement while operating in interstate or foreign coastwise commerce and were exempt from tax under La. R.S. 47:302, 47:305(E) and (I), and 47:305.1. Accordingly, TODCO sought a redetermi-nation of the taxes it allegedly owed.
 

 Before the Board, the DOR contended that the taxes due, as set forth in the assessment, were based on five categories of transactions discovered during the audit: (1) catering services, (2) additional tax due on repairs, (3) additional tax due on purchases, (4) additional tax due on assets, and (5) additional tax due on fair market value assets. Additionally, before the Board, TODCO claimed several “exceptions” to the audit. Specifically, TODCO claimed “exceptions” (with subparts) as follows: Exception 1 — Repairs—(a) equipment imported from outer-continental shelf waters into Louisiana for repair and immediately returned offshore for use in international waters, (b) repairs made in international waters, and (c) international waters — first use offshore; Exception 2— Repairs and Materials — (a)(i) repairs made in Texas and then returned to international waters, (a)(ii) repairs made in Louisiana and then returned to international waters, (a)(iii) repairs made to equipment in international waters off Louisiana and Texas, and (b) first use offshore;
 
 [2]
 
 Exception 3— Transportation, Freight, Shipping; and Similar h Services; Exception 4 — Incorrect Invoice Amounts and Duplication of Invoices; Exception 5 — Non-Taxable Services; Exception 6 — Extraterritorial Fabrication of Rigs; Exception 7 — Pipe & Collars-Use Tax — (a) Texas pipe that stayed in Texas (extraterritorial), and (b) marshaled for export to international rigs in outer continental shelf waters off Texas; Exception 8 — Supplies for International Rigs Operating Overseas — (a) supplies for rigs in foreign commerce, and (b) supplies for export to rigs in Nigeria or South America; Exception 9 — Taxes Paid Direct on Sales/Use Tax Return; Exception 10— Credit for Taxes Paid But Not Credited; and Exception 11 — Catering.
 

 A hearing before the Board was held on July 17, 2007. With respect to the exceptions of TODCO, the Board issued reasons for judgment and specifically found in favor of the DOR on exceptions 1(a) and 2(a)(ii) and in favor of TODCO on exceptions 1(b), 1(c), 2(a)(i), 2(a)(iii), 2(b), 3, 5, 6, 7(a), 7(b), 8(a), 8(b), and 11. With respect
 
 *741
 
 to exception 4, the Board determined that transactions that had already been taxed more than once due to incorrect invoice amounts or duplication of invoices were taxable only once; and concerning exceptions 9 and 10, the Board found that if TODCO could demonstrate it had already paid sales or use taxes to Louisiana (or to a vendor who had not paid the state), then no further sales or use taxes would be due and that TODCO would be given credit for such payments.
 

 A judgment reflecting the Board’s decision was signed on January 15, 2008. The judgment specifically provided as follows: that all repair transactions (Exceptions 1(a) and 2(a)(ii)) which actually took place in Louisiana were taxable and that there be judgment against TODCO in that amount, plus interest from the date of the assessment until paid; that all repairs (Exceptions 1(b), 1(c), 2(a)(i), and 2(a)(iii)) made in international waters or in Texas were not taxable; that all sales of materials and supplies (Exception 1(c) and 2(b)) for, on, or in drilling vessels for first use offshore were not taxable; that transportation, freight and shipping 1 ¡¡services (Exception 3) were not taxable; that any transaction that had been taxed more that once due to incorrect invoice amounts or duplication of invoices (Exception 4) were taxable only once; that all services for pipe inspection, pipe cleaning, testing and certification (Exception 5) were not taxable; that all repairs and modifications to rigs (Exception 6) done out of state, offshore, in international waters or in a foreign country were not taxable; that all purchases of pipe and collars in Texas and used in international waters (Exception 7(a)) were not taxable; that property purchased or imported into Louisiana and earmarked for use offshore and first used outside of Louisiana (Exception 7(b)) were not taxable; that sales by Louisiana vendors, where the items purchased were shipped by the vendor or common carrier to a port of debarkation for further shipment to Nigeria, Africa, and South America (Exceptions 8(a) and 8(b)) were not taxable; that TODCO was to receive credit for all sales tax paid to vendors who did not forward or pay these taxes to the state (Exception 10); and that the value of all meals provided all workers living, operating, and working on drilling rigs (Exception 11) were not taxable.
 

 On January 29, 2008, the DOR filed a petition for judicial review of the decision of the Board.
 
 [3]
 
 In proceedings before the trial court, the DOR contended: (1) that the Board erred in determining that R & B’s sales of meals (Exception 11) were not taxable; (2) that the Board incorrectly applied La. R.S. 47:305.1 (Exceptions 1(c)); (3) that the Board incorrectly applied La. R.S. 47:305.10 (Exceptions 1(c), 2(a)(iii), 2(b), and 7(b)); (4) that the Board incorrectly applied La. R.S. 47:305(E) (Exceptions 2(a)(iii) and 7(b)); (5) that the Board erroneously made “findings of fact” concerning transactions that were not included in the audit or assessment; and (6) that the Board erred in failing to address penalties. As such, the DOR contended that the amount of the unpaid assessed taxes totaled |fi$347,712.94, with $16,406.24 relating to the sales of meals; $165,188.05 relating to taxable repairs; $47,321.08 relating to purchases of tangible personal property; $122,261.40 relating to equipment purchased out of state, tax-free and subsequently brought into Louisiana for taxable use; and a credit of $3,463.83 for payment of too much advanced sales tax.
 

 First and foremost, in the proceedings before the trial court, the DOR conceded that transportation, freight, and shipping
 
 *742
 
 services (Exception 3) were not taxable and believed that those transactions had since been removed from the assessment and that fabrication of rigs in Texas, Mississippi, and Alabama that did not enter Louisiana during the audit period (Exception 6) were not taxable, and therefore, should be removed from the assessment.
 

 However, the DOR contended that TODCO- presented several exceptions- to transactions that were not included in the final assessment. Specifically, the DOR agreed that repairs made in Texas and then returned to international waters (Exception 2(a)(i)) were not taxable and were not contained in the assessment; duplications of invoices (Exception 4) were removed from the audit and not included in the final assessment; all services for pipe inspection, pipe cleaning, testing, and certification (Exception 5) were not taxable and removed from the assessment; the purchases of pipes and collars in Texas and used in international waters (Exception 7(a)) and that did not enter Louisiana during the audit period were not taxable (although the assessment did include use taxes on the reasonable market value of pipe purchased out of state, used out of state, and then brought into Louisiana and that the Board correctly noted that those assets, if subsequently brought into Louisiana, could be subject to a use tax upon use in this state); sales by Louisiana vendors, where the items purchased were shipped by the vendor or common carrier to a port of debarkation for further shipment to Nigeria, Africa, and South America (Exceptions 8(a) and 8(b)) were not taxable and not included in |7the final audit or assessment; that the division of R & B at issue (Shallow Water Offshore Operations) was not entitled to credit for taxes paid directly on sales and use tax returns (Exception 9) because that division was not registered with Louisiana for sales taxes and did not file sales tax returns; and the issue of credit for all sales tax paid to vendors who did not forward or pay these taxes to the state (Exception 10) had been already resolved.
 

 Following a hearing, the trial court rendered and signed a judgment on September 21, 2010 affirming and upholding the decision of the Board in its entirety. From this judgment, the DOR appeals. On appeal, the DOR raises the same assignments of error presented to the trial court, essentially challenging those portions of the Board’s decision that are adverse to it.
 

 II. STANDARD OF REVIEW
 

 With regard to the appropriate standard of review for those decisions issued by the Board, La. R.S. 47:1435 is instructive and provides- that reviewing courts may reverse or modify decisions of the Board, with or without remanding the case, if those decisions are not in accordance with law.
 
 R & B Falcon Drilling USA, Inc. v. Secretary, Department of Revenue,
 
 2009-0256, p. 3 (La.App. 1st Cir.1/11/10), 31 So.3d 1083, 1085. Judicial review of a decision of the Board is rendered on the record as made up before the Board and is limited to facts on the record and questions of law.
 
 Id.; see
 
 La. R.S. 47:1434. The Board’s findings of fact should be accepted where there is substantial evidence in the record to support them and should not be set aside unless they are manifestly erroneous in view of the evidence on the entire record.
 
 R & B Falcon v. Secretary,
 
 2009-0256 at pp. 3-4, 31 So.3d at 1085. Furthermore, if the Board has correctly applied the law and adhered to correct procedural standards, its judgment should be affirmed.
 
 R & B Falcon v. Secretary,
 
 2009-0256 at p. 4, 31 So.3d at 1085.
 

 
 *743
 
 ]RIII. LAW AND DISCUSSION
 

 A. Sales of Meals (Exception 11)
 

 According to the DOR, various oil companies contracted with R & B to provide a drilling system unit, equipment, and personnel to drill on the respective oil company’s lease. Included within the contract were catering and linen services for R & B’s personnel plus two oil company representatives. However, since R
 
 &
 
 B was not able to provide every function necessary to maintain the oil drilling operation, third party personnel, who were not provided for in the contract, were necessary to perform these functions. R & B’s drilling contracts with the oil companies stipulated that the oil company would be charged a set amount for all additional meals and lodging provided to these third parties. Specifically, the drilling contract provided that three meals per day were provided for everyone on the rig, and that any meal served to non-contract personnel would be charged to the oil company at $12.00 per day per person. According to the reports and billing records provided by R & B, meals were served to non-contract personnel on a daily basis. The DOR considered this catering service as a business because, on any given day, non-contract personnel were on the rig and R & B consistently billed the oil companies for these additional meals. However, R & B did not charge tax on any additional meals charged to the oil companies and served to the third party personnel. Thus, the DOR contended that R
 
 &
 
 B was providing meals on a consistent basis, and therefore was in the business of providing catering services, such that its sales of extra meals were taxable.
 

 R & B contended however, that the meals provided by R & B to its employees and other workers while living on the drilling vessels were supplies needed to maintain drilling operations, and as such constituted supplies and materials utilized by drilling vessels of fifty tons displacement or more, therefore, no sales or use tax could be imposed on those materials, supplies, and equipment funder La. R.S. 47:305.1(B). Furthermore, R & B contended that those transactions did not fall within those activities that could be taxed under Title 47 of the Louisiana Revised Statutes, because it did not hold itself out as being engaged in that business.
 

 The Board found that the evidence and testimony at the hearing established that R & B purchased from caterers meals that were provided and consumed during the drilling operations by R & B’s employees, along with a small and insignificant amount for other individuals living, operating, and working on the drilling rigs. Therefore, the Board concluded that there was no sales tax due on the value of these meals and catering.
 

 However, following the Board’s decision in this regard, this court issued its opinion in
 
 R & B Falcon v. Secretary,
 
 2009-0256 at pp. 4-7, 31 So.3d at 1085-1087, which specifically addressed the issue of whether R & B’s sales of extra meals (by a different division of the company than the division at issue in this ease) for the benefit of its customers’ personnel were taxable under state sales and use tax provisions. This court noted that the sales of extra meals for the benefit of customer personnel were not isolated and occasional, but rather that they were made frequently, routinely, and continuously.
 
 R & B Falcon v. Secretary,
 
 2009-0256 at p. 6, 31 So.3d at 1087. And although R
 
 &
 
 B’s primary business was not the sale of meals, this court concluded that it should be construed to be engaged in that business for purposes of levying sales taxes, and therefore, the sales of those extra meals were taxable.
 
 R & B Falcon v.
 
 
 *744
 

 Secretary,
 
 2009-0256 at p. 7, 31 So.3d at 1087.
 

 The Board, when it issued its decision, did not have the benefit of this court’s opinion in
 
 R & B Falcon v. Secretary,
 
 2009-0256 at pp. 4-7, 31 So.3d at 1085-1087, although based on the reasoning set forth therein, in the case before us, R & B’s sales of extra meals may be taxable. However, in
 
 R & B Falcon v. 10Secretary,
 
 2009-0256 at p.3 n. 3, 31 So.3d at 1085 n. 3, all of the sales of extra meals at issue and subject to the audit occurred in Louisiana inland waters. In this case, the record before us is not clear as to whether these sales of extra meals occurred in Louisiana inland waters or whether they occurred in federal or international waters (and therefore, beyond the taxing jurisdiction of Louisiana or the DOR). While the testimony offered by the DOR suggested that only meals served in Louisiana inland waters were included in the assessment, the testimony offered by TODCO established that this division of R & B operates 80-90% of the time outside of Louisiana waters in federal or international waters, and as such, 80-90% of the extra meals are served and consumed in federal or international waters. Accordingly, we are unable to determine whether the Board’s decision was in accordance with law. Therefore, we remand this issue to the Board for consideration of this court’s opinion in
 
 R & B Falcon v. Secretary,
 
 2009-0256 at pp. 4-7, 31 So.3d at 1085-1087, and for a determination of whether the sales of extra meals during the audit period were taxable under Louisiana law.
 

 B. Louisiana Revised Statutes 1.7:805.1 (Exceptions 1(c))
 

 According to the DOR, R & B made numerous purchases in Louisiana during periods that its rigs were operating within the territorial waters of Louisiana, in another state, or in another country that were not for the maintenance of a component part of the rigs; however, R & B did not pay sales tax or accrue use tax on any of the purchases.
 

 R & B claimed that the transactions involved represented purchases of materials and supplies for drilling vessels operating in foreign or interstate coastwise commerce, in that the purchases were shipped by a third-party common carrier to a port of debarkation and shipped offshore to international waters, and received by R & B on location. R & B contended that as purchases of supplies or materials for drilling vessels operating in foreign or interstate coastwise commerce, | pthey were exempt from tax under La. R.S. 47:305.1 and La. R.S. 47:305.10. The Board ruled that the purchases of materials and supplies for first use in or on drilling vessels operating in foreign or international waters were not a taxable transaction.
 

 Thus, we first address the exemption from sales and use taxes on purchases of supplies and materials in Louisiana as provided in La. R.S. 47:305.1. At the time of R & B’s purchase of the materials
 
 (i.e.,
 
 during the audit period), La. R.S. 47:305.1
 
 provided
 

 [4]
 

 :
 

 
 *745
 
 A. The tax imposed by [La.] R.S. 47:302(A)(1), 321(A)(1), and 331(A)(1) shall not apply to sales of materials, equipment, and machinery which enter into and become component parts of ships, vessels, or barges, including commercial fishing vessels, drilling ships, or drilling barges, of fifty tons load displacement and over, built in Louisiana nor to the gross proceeds from the sale of such ships, vessels, or barges, when sold by the builder thereof.
 

 B. The taxes imposed by [La.] R.S. 47:302 and [La.] R.S. 47:321 shall not apply to materials and supplies purchased by the owners or operators of ships or vessels operating exclusively in foreign or interstate coastwise commerce, where such materials and supplies are loaded upon the ship or vessel for use or consumption in the maintenance and operation thereof; nor to repair services performed upon ships or vessels operating exclusively in foreign or interstate coastwise commerce; nor to the materials and supplies used in such repairs where such materials and supplies enter into and become a component part of such ships or vessels; nor to laundry services performed for the owners or operators of such ships or vessels operating exclusively in foreign or interstate coastwise commerce, where the laundered articles are to be used in the course of the operation of such ships or vessels.
 

 C. The exemption from the state sales tax provided in this Section shall be applicable to any sales tax levied by a local governmental subdivision or school board.
 

 |12P. Repealed by Acts 1982, No. 56, § 4, eff. July 10,1982.
 

 The exemption provided in La. R.S. 47:305.1(B) only applied to “ships or vessels;” it did not apply to drilling barges.
 
 See Mallard Bay Drilling, Inc. v. Kennedy,
 
 2004-1089, pp. 21-22 (La.6/29/05), 914 So.2d 533, 548-549;
 
 R&B Falcon v. Secretary,
 
 2009-0256 at p. 8, 31 So.3d at 1088. As the party claiming the exemption, R&B had the burden of establishing that its rigs were “ships or vessels” for purposes of La. R.S. 47:305.1. The evidence in the record only established that the particular division of R & B that was being audited operated a fleet of jack-up rigs and submersible rigs. However, the Board (nor the trial court) made a factual finding as to whether the jack-up rigs and submersible rigs of R & B were “ships or vessels” as contemplated by La. R.S. 47:305.1.
 

 In
 
 R&B Falcon Drilling USA, Inc. v. Terrebonne Parish Sales and Use Tax Department,
 
 2008-0843, p. 3 (La.App. 1st Cir.11/3/08), 996 So.2d 701
 
 (unpublished
 
 opinion) this court found no manifest error in the trial court’s factual finding that R & B’s jack-up rigs were essentially barges, and did not qualify as a “ship or vessel” for purposes of La. R.S. 47:305(B). Again, the Board, when it issued its decision, did not have the benefit of this court’s opinion in
 
 R & B Falcon v. Secretary,
 
 2009-0256 at pp. 4-7, 31 So.3d at 1085-1087. Accordingly, we remand this issue to the Board for a determination of whether R & B’s jack-up rigs and submersible rigs are “ships or vessels” for purposes of La. R.S. 47:305(B) (thereby entitling it to the exemption set forth therein) or whether the jack-up rigs and submersible rigs are essentially barges, and therefore not entitled to the exemption set forth in La. R.S. 47:305(B).
 

 
 *746
 

 C. La. R.S. Jp7:305.10 (Exceptions 1(c), 2(a) (iii), 2(b), and 7(b))
 

 Louisiana Revised Statutes 47:305.10 provides an exemption for purchases of tangible personal property for first use exclusively beyond the territorial limits 1 i3of Louisiana. With regard to certain transactions included in the assessment, R & B contended that many of the transactions were exempt under the provisions of La. R.S. 47:305.10. Specifically, R & B claimed that the transactions involved purchases of materials or supplies documented for use outside the United States in international waters or in the territorial waters of a foreign nation (Exception 1(c)); repairs made to equipment on the rig itself while in international waters (or extraterritorial transactions) (Exception 2(a)(iii)); purchases that were dedicated sales of materials and supplies for operating in international waters, which were shipped by the vendor or third party to R & B in international waters (Exception 2(b)); and purchases of materials, supplies, and equipment that was collected and earmarked for delivery to drilling vessels in outer-continental shelf waters (Exception 7(b)). However, the DOR contended that R & B failed to establish it had fulfilled the statutory requirements to qualify for the exemption and that R
 
 &
 
 B was not registered for sales and use tax in Louisiana.
 

 Louisiana Revised Statutes 47:305.10 provides:
 

 A. There shall be no sales or use tax due upon the sale at retail or use of tangible personal property, including diesel fuel, purchased within or imported into Louisiana for first use exclusively beyond the territorial limits of Louisiana as specifically provided hereinafter in this Section.
 

 B. If the first use of tangible personal property purchased within or imported into Louisiana for first use beyond the territorial limits of the state occurs in a state which imposes a sales or use tax, the exemption provided herein shall apply only if:
 

 (1) The purchaser is properly registered for sales and use tax purposes in the state of use and regularly reports and pays sales and use tax in such other state; and
 

 (2) The state in which the first use occurs grants on a reciprocal basis a similar exemption on purchases within that state for use in Louisiana; and
 

 (3) The purchaser obtains from the secretary of the Department of Revenue a certificate authorizing him to make the nontaxable purchases authorized under this Subsection; or
 

 |
 
 u(4)
 
 The property is subject to registration as a motor boat subject to registration by the state of Louisiana and such property is not registered for use in this state.
 

 C.If the first use of tangible personal property purchased within or imported into Louisiana occurs offshore beyond the territorial limits of any state, the exemption provided herein shall apply only if:
 

 (1) The purchaser or importer has determined the location of the first use of the tangible personal property at the time of its purchase and has notified the vendor of that location; or
 

 (2) The purchaser or importer has not determined the intended offshore location of first use at the time of purchase or importation, but has obtained from the secretary of the Department of Revenue an “offshore registration number” authorizing him to claim the exemption under the conditions provided in this Paragraph:
 

 (a) Said offshore registration number shall be issued only if the purchaser or
 
 *747
 
 importer has shown, to the satisfaction of the secretary, that records, reports, and business practices are sufficient to permit verification that tangible personal property purchased or imported tax-free under this Subsection is, in fact, being purchased or imported for use offshore beyond the territorial limits of any state. In cases of purchases of fungible goods, including vessel fuel and lubricants, the required records shall include purchase invoices, vessel logs, fuel usage records, fuel transfer records and other reports and records that will enable the secretary to determine the amount of fungible goods consumed within Louisiana so as to be subject to the sales and use tax, and the amount of fungible goods delivered to or consumed at offshore locations beyond the territorial limits of the state, so as not to be subject to the sales and use tax. For the purpose of the Section, the term “fungible goods” means goods of which any unit is unidentifiable and is, from its nature or by mercantile custom, treated as the equivalent of any other unit and shall include crude petroleum and its refined products.
 

 (b) The offshore registration number issued by the secretary under this Subsection may be revoked by the secretary at any time if the purchaser or importer fails to meet the conditions set herein, or if the secretary finds that the purchaser or importer is consistently using the certificate to purchase or import tax-free tangible personal property for first use in state.
 

 (c) If the offshore registration number is revoked, all tangible personal property purchased or imported tax-free under this Paragraph and in the possession of the purchaser or importer within this state shall be deemed taxable unless otherwise exempt under the provisions of Paragraph (1) of this Subsection. If the provisions of Paragraph (1) of this Subsection are not complied with, any subsequent purchase or import of tangible personal property will be taxable, whether for instate or offshore use, until the certificate and offshore number are |! ¿reissued.
 

 (d)Whenever there is a conflict between a purchaser or importer and the secretary as to whether an offshore registration number shall be issued, reissued, or revoked, it shall be the responsibility of the purchaser or importer to show that he meets the conditions and requirements set herein for having and retaining said certificate and offshore registration number.
 

 (3) Except for purchases or importation of tangible personal property in accordance with Paragraphs (1) and (2) of this Subsection, any purchase or importation of property is taxable at the time of purchase or import unless otherwise exempt.
 

 D. If tangible personal property purchased or imported tax-free under the provisions of this Section is subsequently used for any taxable purpose within the state, use tax shall be paid by the purchaser or importer as of the time of its use in this state. Storage of property purchased or imported tax-free under this Section which is ultimately used in another state will be considered a “subsequent use for a taxable purpose”.
 

 E. If tangible personal property purchased within or imported into the state tax-free under the provisions of this Section is later returned to Louisiana for use for a taxable purpose, the property shall be subject to the Louisiana use tax as of the time it is brought into the state, subject to the credit provided in R.S. 47:303(A).
 

 
 *748
 
 F. “Use for a taxable purpose” shall not include, for purposes of this Section, transportation beyond the territorial limits of the state; transportation back into the state; and repairing, modifying, further fabrication, and storing for first use offshore beyond the territorial limits of any state. Storage and withdrawal from storage for first use offshore beyond the territorial limits of any state is not a taxable use for purposes of this Section. Charges for repairs in Louisiana to tangible personal property for use in offshore areas are taxable, except those described in R.S. 47:305(1).
 

 G. If fungible goods are purchased or imported tax-free for use or consumption at locations both within Louisiana and offshore beyond the territorial limits of any state, under the exemption certificate and offshore registration number provided for in this Section, only that portion of the fungible goods delivered to a location offshore beyond the territorial limits of any state and used or consumed at that location shall be exempt. For the purpose of this Section, the term “fungible goods” means goods of which any unit is unidentifiable and is, from its nature or by mercantile custom, treated as the equivalent of any other unit and shall include crude petroleum and its refined products.
 

 H. The secretary of the Department of Revenue shall promulgate rules and regulations necessary for the implementation of this Section.
 

 ha!. The exemptions from the state sales and use tax provided in this Section shall be applicable to any sales and use tax levied by a local political subdivision or school board.
 

 The Board ruled that the purchases of materials and supplies for first use in or on drilling vessels operating in foreign or international waters (Exception 1(c)) were not taxable transactions, that repairs made to equipment on a rig in international waters (Exception 2(a)(iii)) were not taxable services, that the sales of materials and supplies which were delivered for first use in international waters (Exception 2(b)) were not taxable, and that property purchased or imported into Louisiana earmarked for first use outside of the territorial limits of Louisiana and first used out of state (Exception 7(b)) was not taxable.
 

 Although R & B presented evidence at the hearing that the transactions involved the purchase of supplies and materials that were sent directly by the vendor or common carrier to the port of debarkation and shipped to international waters, with delivery being made in international waters, again the Board did not make a factual finding as to whether R & B established that it had fulfilled the statutory requirements to qualify for the exemption under La. R.S. 47:305.10. Accordingly, we are unable to determine whether the Board’s factual findings were reasonably supported by the record (or manifestly erroneous) or whether the Board’s ruling was in accordance with law. Therefore, we remand this matter to the Board for a determination of this issue.
 

 D. La. R.S. í7:305(E) (Exceptions 2(a)(iii) and 7(b))
 

 In this assignment of error, the DOR contends that the Board incorrectly applied La. R.S. 47:305(E), which provides:
 

 It is not the intention of any taxing authority to levy a tax upon articles of tangible personal property imported into this state, or produced or manufactured in this state, for export; nor is it the intention of any taxing authority to levy a tax on bona fide interstate commerce; however, nothing herein shall prevent the collection of the taxes due on sales of tangible personal property into this
 
 *749
 
 state which are | ^promoted through the use of catalogs and other means of sales promotion and for which federal legislation or federal jurisprudence enables the enforcement of the sales tax of a taxing authority upon the conduct of such business. It is, however, the intention of the taxing authorities to levy a tax on the sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this state, of tangible personal property after it has come to rest in this state and has become a part of the mass of property in this state. At such time as federal legislation or federal jurisprudence as to sales in interstate commerce promoted through the use of catalogs and other means of sales promotions enables the enforcement of this Chapter or any other law or local ordinance imposing a sales tax against vendors that have no other nexus with the taxing jurisdiction, the following provisions shall apply to such sales on which sales and use tax would not otherwise be collected.
 

 TODCO claimed that purchases for repairs made to equipment on the rig itself while in international waters (Exception 2(a)(iii)) and purchases of materials, supplies, and equipment that was collected and earmarked for delivery to drilling vessels in outer-continental shelf waters (Exception 7(b)) were exempt from taxation under this provision, and that to impose taxes on those purchases would unduly burden its interstate commerce and foreign coastwise commerce. However, again, the Board only ruled that the purchases were not taxable and did not expressly rule on the applicability of La. R.S. 47:305(E) and whether the taxes sought to be imposed by DOR would unduly burden interstate commerce or foreign coastwise commerce; or whether any of the tangible personal property that was the subject of the audit had come to rest in Louisiana and became part of the common mass of property located in Louisiana during the audit period. Accordingly, we remand this matter to the Board for a determination of this issue. We also instruct the Board to consider, in its determination of this issue, the interpretation of La. R.S. 47:305(E) and the “taxable moment doctrine” as set forth in
 
 Word of Life Christian Center v. West,
 
 2004-1484 (La.4/17/06), 936 So.2d 1226;
 
 see also R & B Falcon v. Terrebonne,
 
 2008-0843 at pp. 3-4, 996 So.2d 701.
 

 E. The Board’s “findings of fact” concerning transactions not included in the audit or assessment
 

 |18In this assignment of error, the DOR challenges the Board’s reasons for judgment contending that its ruling simply contained “equivocal statements rather than definitive rulings on factual issues” and that the Board issued rulings on matters that were not contained in the final audit or assessment.
 

 We have reviewed the Board’s reasons for judgment and the judgment, and as we have already noted herein, find that they failed to adequately address all of the factual issues raised during the hearing before it. Therefore, we have remanded this matter to the Board for the determination of such issues. To the extent that the Board’s decision included “rulings” on matters that were not before it or not contained in the final audit, we are unclear as to what remedy the DOR seeks from this court in this regard. Therefore, we find no merit to this assignment of error.
 

 F. Penalties
 

 In the DOR’s final assignment of error, it challenges the Board’s failure to address delinquent penalties and interest in accordance with La. R.S. 47:1601 and 1602.
 

 
 *750
 
 Louisiana Revised Statutes 47:1601 provides, in pertinent part:
 

 A. (1) When any taxpayer fails to pay a tax, or any portion thereof, on or before the day where it is required to be paid under the provisions of this Subtitle, interest shall be added to the amount of tax due and such interest shall be computed from the statutory payment date of the tax until the tax is paid. The rate of interest shall be as provided for in Paragraph (A)(2) of this Subsection. However, in the case of a waiver of restrictions and delays as provided for in R.S. 47:1565.1, if the taxpayer pays the tax due within ten days after the notice of assessment is mailed to him, the interest shall be computed to the thirtieth day after the filing of such waiver or to the date the deficiency is paid, whichever is earlier. The interest provided for herein shall be an obligation to be collected and accounted for in the same manner as if it were a part of the tax due and can be enforced in a separate action or in the same action for collection of the tax and, unless otherwise provided for in this Title, shall not be waived or remitted.
 

 Additionally, La. R.S. 47:1602(A) provides, in pertinent part, that:
 

 When any taxpayer fails to make and file any return required to be made under the provisions of this Subtitle before the time that the |inreturn becomes delinquent or when any taxpayer fails to timely remit to the secretary of the Department of Revenue the total amount of tax that is due on a return which he has filed, there shall be imposed, in addition to any other penalties provided, a specific penalty to be added to the tax.
 

 We note that the Board, in its ruling and judgment, specifically addressed and awarded interest on taxes due for all repair transactions which actually took place in Louisiana (Exceptions 1(a) and 2(a)(ii)). However, we agree that the Board should have also addressed the issue of penalties and that it failed to do so. Therefore, on remand, we order the Board to address the issue of penalties in accordance with La. R.S. 47:1602; and further with regard to any transactions that it determines are taxable, to also address the issue of interest on those taxes.
 

 CONCLUSION
 

 For all of the above and foregoing reasons, the judgment of the trial court affirming and upholding the decision of the Board of Tax Appeals is vacated and this matter is remanded to the Board of Tax Appeals for consideration and a ruling on the issues detailed in this opinion. The assessment of all costs of this appeal are deferred until a final disposition in this matter.
 

 JUDGEMENT VACATED; REMANDED TO THE BOARD OF TAX APPEALS.
 

 GAIDRY, J., concurs.
 

 CARTER, C.J., concurs.
 

 [1]
 

 . Previously, on June 17, 2003, the DOR issued a notice of proposed tax due showing:
 
 *740
 
 taxes due in the amount of $447,864.03, interest to July 17, 2003 in the amount of $333,274.15, delinquent penalty in the amount of $109,383.02, a credit for payment in the amount $100,151.09, with the total amount of $790,370.11 due and payable.
 

 [2]
 

 . Exceptions 2(a)(i), 2(a)(ii), 2(a)(iii), and 2(b) are also referred to in the record as Exceptions 2(1), 2(2), 2(3), and 2(4), respectively.
 

 [3]
 

 .
 
 See
 
 La. R.S. 47:1434.
 

 [4]
 

 . The Louisiana Legislature amended La. R.S. 47:305.1 in 2002 (which is after the tax period in question) to define "foreign or interstate coastwise commerce.”
 
 See
 
 current La. R.S. 47:305.1(0; 2002 La. Acts, No. 40, § 1, effective June 25, 2002; 2002 La. Acts, No. 41, § 1, effective June 25, 2002. Despite the Legislature's statement that the amendment was "interpretive,” the Louisiana Supreme Court held that subsection (C) was prospective only.
 
 Mallard Bay Drilling, Inc. v. Kennedy,
 
 2004-1089, p. 1 (La.6/29/05), 914 So.2d 533, 537. Additionally, in 2006, the Legislature amended subsection B to include "barges” and "drilling ships.”
 
 See
 
 current La. R.S. 47:305.1(B); 2006 La. Acts, 1st Ex.Sess., No. 34, § 1, effective February 23, 2006. Again, despite the Legislature’s statement that the
 
 *745
 
 amendment was interpretive, in
 
 R&B Falcon Drilling USA, Inc. v. Lafourche Parish School Board,
 
 2006-0064, p. 6 (La.App. 1st Cir.11/3/06), 950 So.2d 696, 700-701, this court held that the amendment to subsection (B) only had prospective effect.