| FILMORE PARC | * | NO. 2024-CA-0475 |
| APARTMENTS II | | |
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| NORMAN WHITE, CHIEF | | FOURTH CIRCUIT |
| FINANCIAL OFFICER AND | * | |
| DIRECTOR OF FINANCE, | | STATE OF LOUISIANA |
| CITY OF NEW ORLEANS; | * * * * * * * | |
| ERROLL WILLIAMS, | | |
| ASSESSOR, ORLEANS | | |
| PARISH; AND THE | | |
| CHAIRMAN, LOUISIANA TAX | | |
| COMMISSION | | |

CONSOLIDATED WITH:                      CONSOLIDATED WITH:

MFLC PARTNERS, A LOUISIANA              NO. 2024-CA-0476
PARTNERSHIP IN COMENDAM

VERSUS

NORMAN WHITE, CHIEF FINANCIAL
OFFICER AND DIRECTOR OF FINANCE,
CITY OF NEW ORLEANS; ERROLL
WILLIAMS, ASSESSOR, ORLEANS
PARISH; AND THE CHAIRMAN,
LOUISIANA TAX COMMISSION

APPEAL FROM
BOARD OF TAX APPEALS
NO. L01364 C/W L01365
Judge Cade R. Cole
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Dale N. Atkins, Judge Karen K. Herman)


**DYSART, J., DISSENTS WITH REASONS**

Cheryl M. Kornick
Robert S. Angelico
LISKOW & LEWIS, APLC
701 Poydras Street, Suite 5000
New Orleans, LA 70139-5099


COUNSEL FOR PLAINTIFFS/APPELLANTS, Filmore Parc Apartments II and MFLC Partners

John J. Weiler
Reese F. Williamson
WEILER & REES, LLC
909 Poydras Street, Suite 1250
New Orleans, LA 70112


COUNSEL FOR DEFENDANT/APPELLEE, Errol G. Williams, Assessor, Orleans Parish

**AFFIRMED**
**FEBRUARY 14, 2025**

DNA

KKH

This is a tax dispute concerning the denial of a request for an exemption from *ad valorem* taxation. Appellants, Filmore Parc Apartments II ("Filmore") and MFLC Partners (collectively "Taxpayers"), seek review of the April 11, 2024 judgment rendered by the Board of Tax Appeals ("BTA"), which dismissed the claims asserted in Taxpayers' respective Petitions to Recover Taxes Paid under Protest; ordered that Taxpayers are not entitled to claim the La. Const. art. VII, § 21(A) exemption from *ad valorem* taxation on the Filmore Parc I and Filmore Parc II apartment complexes for the 2022 tax year; and authorized Appellee, Errol G. Williams, in his official capacity as the assessor for Orleans Parish ("Assessor Williams"), to retain and distribute the amounts paid by Taxpayers under protest in response to their 2022 tax bills. For the following reasons, we affirm the BTA's judgment.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### 2017 *Filmore*

These parties have previously been before this Court on appeal twice regarding the 2014 tax bills assessed on the subject properties. Though the tax year was different in the prior appeals (2014 as opposed to 2022 in the matter *sub*

1

*judice*), the parties, the properties, and the issues are the same. Thus, the prior appeals offer factual background and procedural history relevant to the present appeal.

In the first of those appeals, *Filmore Parc Apartments II v. Foster* ("2017 *Filmore*"), this Court outlined the following factual background and procedural history:[1]

> Michael Vales [("Mr. Vales")] formed Mirabeau Family Learning Center, Inc. ("MFLC"), a Louisiana non-profit corporation, as a vehicle to counteracting poverty. MFLC acquired the property ("Property") in question in 1995, "for the specific purpose of constructing housing units to provide affordable housing to low and very low income families." MFLC entered into a Land Use Restriction Agreement ("LURA") with the requirement that the Property be used "solely to provide housing to low- and very low-income families." Filmore Parc Apartments II ("Filmore"), a partnership in commendam,[2] was formed by Mr. Vales with MFLC as the general partner. The Housing Outreach Fund VII Limited Partnership, a Fannie Mae entity, is the limited partner. MFLC's interest in the Property was then transferred to Filmore.
>
> Filmore operated the Property as "affordable housing for low- and very low-income families." The Property operates 32 units as Section 8 Project Based Voucher units [("the 32 Units")]. The remaining units meet the requirements of § 42 of the Internal Revenue Code. Filmore contends that the Property is operated pursuant to the federal Hope VI program and La. R.S. § 40:600.1-600.24. However, Filmore Parc was assessed *ad valorem* taxes for the Property for the 2014 tax year. Filmore paid $61,755.92 on January 24, 2014, and contended that it was exempt pursuant to Louisiana Const. Art. VII, § 21(A).

---

[1] In the trial court proceedings that led to 2017 *Filmore*, both Filmore and MFLC Partners contested their 2014 tax bills; however, Filmore's 2014 case was litigated, while MFLC Partners' 2014 case was held dormant awaiting resolution of Filmore's case. Thus, this Court's 2017 *Filmore* Opinion focused solely on Filmore.

[2] Louisiana Civil Code Article 2837 defines a partnership in commendam as a partnership "consist[ing] of one or more general partners who have the powers, rights, and obligations of partners, and one or more partners in commendam, or limited partners, whose powers, rights, and obligations are defined in" Chapter 7 ("Partnership in Commendam") of Title XI ("Partnership") of Book III ("Of the Different Modes of Acquiring the Ownership of Things") of the Louisiana Civil Code.

Filmore then filed a Petition to Recover Taxes Paid Under Protest against Norman Foster, Chief Financial Officer and Director of Finance for the City of New Orleans; Erroll Williams, as the Assessor of Orleans Parish; and the Louisiana Tax Commission. . . . Mr. Williams also filed a Motion for Summary Judgment contending that the housing units in the Property were not exempt from *ad valorem* taxation. Filmore filed a Cross-Motion for Summary Judgment alleging exemption. Following a hearing, the trial court found that the Property was not exempt from *ad valorem* taxation for 2014. Accordingly, the trial court granted Mr. Williams' Motion for Summary Judgment and denied Filmore's Cross-Motion for Summary Judgment. Filmore's Petition for Suspensive Appeal followed.

2016-0568, pp. 2-3 (La. App. 4 Cir. 2/15/17), 212 So.3d 621, 623-24 (footnotes omitted).

Thereafter, this Court considered whether the trial court correctly found Filmore was not entitled to the *ad valorem* tax exemption and granted Assessor Williams' Motion for Summary Judgment. This Court explained, "La. Const. art. VII, § 21(A) exempts 'public property used for public purposes' from *ad valorem* taxation." *Filmore Parc Apartments II*, 2016-0568, p. 4, 212 So.3d at 624 (quoting *Slay v. La. Energy & Power Auth.*, 473 So.2d 51, 53 (La. 1985)). This Court then stated the first consideration for determining whether property is exempt under that constitutional provision is whether the property is public property; and the Court stated the subject apartment complex did not qualify for the exemption on this basis because "there [was] no question" that it was "privately owned." *Id.* at p. 5, 212 So.3d at 624. Nonetheless, the Court ultimately reversed the trial court's judgment and remanded the matter, holding the trial court did not properly apply the entire test for determining whether a property is entitled to an exemption from *ad valorem* taxation. *Id.* at p. 9, 212 So.3d at 626-27. As this Court explained, the second consideration "for *ad valorem* tax exemption is" whether the "property [is] used for a public purpose" because ownership alone is not determinative as

3

"property can 'vest' in the public even though the 'title be not in the public.'" *Id.* at pp. 4-5, 212 So.3d at 624-25 (first quoting *Slay*, 473 So.2d at 54; and then quoting *Abundance Square Assocs., L.P. v. Williams*, 2010-0324, p. 5 (La. App. 4 Cir. 3/23/11), 62 So.3d 261, 264). This Court explained that in ruling on the parties' motions for summary judgment, the trial court legally erred in failing to "consider the restrictions Filmore placed upon the Property in furtherance of the mission of providing affordable housing for 'low- and very low-income residents in New Orleans.'" *Id.* at p. 8, 212 So.3d at 626. That is, after determining that the apartment complex was privately owned, the trial court did not move beyond the first prong of the test to the second prong to consider whether the restrictions Filmore placed on the apartment complex meant the property was vested in the public and used for a public purpose so as to exempt it from *ad valorem* taxation despite its private ownership status.

## 2018 *Filmore*

After this Court remanded the matter, the trial court held a hearing on Assessor Williams' motion for summary judgment and Filmore's cross-motion. *Filmore Parc Apartments II v. Foster*, 2018-0359, p. 5 (La. App. 4 Cir. 11/7/18), 318 So.3d 718, 721 ("2018 *Filmore*").[3] In pertinent part, the trial court denied Assessor Williams' motion in part and granted Filmore's cross-motion in part regarding the amounts paid under protest for the 32 Units, finding those units were entitled to the *ad valorem* tax exemption. *Id.* at p. 10, 318 So.3d at 724. The trial court granted Assessor Williams' motion for summary judgment and denied Filmore's cross-motion insofar as those motions pertained to the remaining units,

---

[3] As with the 2017 *Filmore* Opinion, the 2018 *Filmore* Opinion focused on Filmore's apartment complex, not MFLC Partners' apartment complex.

4

finding that the remaining units were not exempt from *ad valorem* taxes. *Id.* Thereafter, Assessor Williams appealed to this Court.

In 2018 *Filmore*, this Court ultimately found there remained genuine issues of material fact regarding (1) whether the 32 Units were "public housing" as opposed to Section 8 Project Based Voucher ("PBV") Units and (2) use of the revenue generated by those 32 Units. *Filmore Parc Apartments II*, 2018-0359, pp. 20-23, 318 So.3d at 730-32. Regarding the former, as this Court summarized, the summary judgment evidence included the affidavits of Nyssa A. Hackett ("Ms. Hackett"), Manager of PBVs for the Housing Authority of New Orleans ("HANO"); Mr. Vales; Assessor Williams; Ms. Magdalena Merrill ("Ms. Merrill"), Director of Asset Management with HANO; and a Housing Assistance Program ("HAP") contract between Filmore and HANO regarding the 32 Units. *Id.* at p. 20, 318 So.3d at 730. All of these documents referred to the 32 Units as Section 8 PBV units; but Filmore's attorney, at the hearing before the trial court, urged the units were actually part of HANO's inventory. *Id.* Counsel contended HANO "completely own[ed] and control[led]" the 32 Units, which were "HANO['s] units in everything but title." *Id.* In addition to the different descriptions regarding the 32 Units provided between the affidavits and counsel for Filmore, this Court observed the affidavits of the two HANO employees—Ms. Hackett and Ms. Merrill—presented competing evidence. *Id.* at p. 21-22, 318 So.3d at 731. "Ms. Hackett attested, although not based on her personal knowledge," that the apartment complex "constitute[d] 'part of the affordable public housing inventory available in the City of New Orleans.'" *Id.* at p. 21, 318 So.3d at 731. "In contrast, Ms. Merrill attested that there were no 'public housing' units at" the apartment complex. *Id.* at pp. 21-22, 318 So.3d at 731. Ms. Merrill

5

further attested there were no contracts between Filmore and HANO other than the HAP contract. *Id.* at p. 22, 318 So.3d at 731. Regarding the HAP contract, this Court summarized:

> Assessor Williams explained that [the] HAP contract is a standard Housing and Urban Development ("HUD") agreement "whereby Section 8 tenant-based assistance under the housing choice voucher program is offered to private business owners." He attested that the HAP agreement was the only agreement between HANO and Filmore . . . and that Filmore did not offer any "public housing" on behalf of HANO, HUD, or the City of New Orleans.

*Id.* at pp. 5-6, 318 So.3d at 721-22 (footnote omitted). Thus, this Court concluded there were genuine issues of material fact as to whether the 32 Units were "public housing," such that they might be classified as "utilized in a way that is dedicated and open to the public, or used in a way that benefits the general public," or if they were merely Section 8 PBV units. *Id.* at p. 22, 318 So.3d at 731.

As stated previously, this Court also found genuine issues of material fact remained regarding the use of the revenue generated by the 32 Units. *Id.* In particular, this Court noted Filmore's counsel argued before the trial court that certain agreements to which the apartment complex was subject (namely a Home Regulatory Agreement and a Road Home Agreement) "through 'Program Income,' required the revenue generated from the [32 U]nits to go back into [those] units for maintenance and operation." *Id.* However, as this Court observed, "Mr. Vales never referred to 'Program Income' in his affidavit, nor did he attest that the monies derived from the [32 U]nits were mandated to be set aside for maintenance and operation of the units." *Id.* at pp. 22-23, 318 So.3d at 731-32 (footnote omitted). Further, this Court noted Filmore presented no evidence demonstrating that it "deposited revenue generated from the [32 U]nits into an escrow account, as

mandated, for the sole purpose of operation and maintenance of these units." *Id.* at p. 23, 318 So.3d at 732.

In sum, this Court found genuine issues of material fact in the above-two respects precluded summary judgment. This Court reversed the trial court's judgment regarding the 32 Units; affirmed the judgment in every other respect (i.e., affirmed the other units in the complex besides the 32 Units were not entitled to an exemption from *ad valorem* taxation); and remanded the matter for further proceedings regarding the 32 Units. *Id.* at p. 24, 318 So.3d at 732. Filmore subsequently filed a writ application which the Louisiana Supreme Court denied. *Filmore Parc Apartments II v. Foster*, 2018-2050 (La. 2/11/19), 263 So.3d 1151. According to the record in the present appeal, after the matter returned to the trial court per this Court's remand in 2018 *Filmore*, Assessor Williams obtained additional discovery, and Filmore ultimately did not pursue the 2014 tax year litigation any further.

**March 2, 2022 Petitions to Recover Taxes Paid Under Protest**

On March 2, 2022, Filmore filed a "Petition to Recover Taxes Paid Under Protest" ("Filmore's Petition") with the BTA. Therein, Filmore explained it was a Louisiana partnership in commendam formed by the Filmore Parc Partnership Agreement, which consisted of the Mirabeau Family Learning Center, Inc., a Louisiana non-profit corporation, as the general partner with a .01% interest and The Housing Outreach Fund XIII Limited Partnership as the limited partner with a 99.99% interest.

Filmore explained on February 15, 2022, it timely made a payment of $15,034.85 under protest in response to the 2022 Real Estate Tax Bill No. 37W517601 issued by Assessor Williams regarding property that Filmore owned

in Orleans Parish, "Filmore Parc II." In the Petition, Filmore listed various agreements and restrictions by which Filmore Parc II "has been dedicated to public use, serving a public purpose, so as to attain tax exempt status," thereby exempting it from *ad valorem* taxation pursuant to La. Const. art. VII, § 21(A). Filmore asserted that despite the property's private ownership, case law supported a finding that such agreements and restrictions meant Filmore had "translate[d] [the property] into the domain of constitutional exemption by dedicating it to a public use."

Regarding the various agreements and restrictions, Filmore explained it "acquired the Property subject to a Land Use Restriction Agreement ("LURA") that required the owner to maintain the property as multifamily rental housing for Lower-Income Families and Very Low-Income Families as defined by the Housing Act of 1937, 42 U.S.C. § 1437a(b)(2)." Filmore listed another as the Mirabeau Family Learning Center, Inc., having "executed [a HAP] Contract with" HANO in August 2002 through HANO's PBV Program "that applies to 32 of the Units in the Property." According to Filmore, under the HAP Contract, "all contract units must be leased to eligible families referred by the Public Housing Authority ("PHA") waiting list." Additionally, Filmore explained that in March 2011, it executed Tax Credit Regulatory Agreements with the Louisiana Housing Finance Agency ("LHFA"), which encumbered the property. Further, Filmore stated the Mirabeau Family Learning Center, Inc., entered into an agreement with the City of New Orleans concerning rental housing activities under the HOME Investment Partnerships Program and described this as "funds [that] are furnished to the City through HUD and are governed by federal regulations." Finally, Filmore stated, "The State of Louisiana, Division of Administration, Office of Community

Development, as program administrator of the Road Home Program, made certain Incentive Loans to the Project." According to Filmore, "[a]s a condition to the payment of" the Road Home proceeds, the Project had "to provide that 75% of the units in designated buildings would be restricted by occupancy for tenants whose incomes do not exceed 50% of Area Median Income as determined by HUD." In sum, Filmore listed the agreements and restrictions on the Property as: (1) LURA; (2) Tax Credit Agreements; (3) the HOME Agreement; (4) the Road Home Agreement; and (5) the HAP contract to provide Section 8 PBV housing specific to the 32 Units only. Further, Filmore contended all revenue generated by the property had to "go[] back into the public use of providing affordable housing" per the terms of Filmore's partnership agreement and other regulatory documents.

The same day Filmore filed its Petition, MFLC Partners, another Louisiana partnership in commendam, also filed a "Petition to Recover Taxes Paid Under Protest" ("MFLC Partners' Petition"). Therein, MFLC Partners explained it consisted of the Mirabeau Family Learning Center, Inc., as the general partner with a .01% interest and The Housing Outreach Fund XIII Limited Partnership as the limited partner with a 99.99% interest. Like Filmore, MFLC Partners explained that on February 15, 2022, it timely made a payment of $29,008.77 under protest in response to the 2022 Real Estate Tax Bill No. 37W517602 issued by Assessor Williams regarding property it owns in Orleans Parish, "Filmore Parc I." MFLC Partners asserted the same agreements and restrictions that encumbered Filmore Parc II—(1) LURA; (2) Tax Credit Agreements; (3) the HOME Agreement; (4) the Road Home Agreement; and (5) a HAP contract to provide Section 8 PBV housing specific to 71 units only—also encumbered Filmore Parc I. As Filmore contended

9

in its Petition, MFLC Partners contended Filmore Parc I had been dedicated to a public use and should be exempt from *ad valorem* taxation.

In light of the foregoing, Filmore and MFLC Partners contended their respective 2022 tax bills were null and void and they should receive refunds of the amounts they paid under protest for their affordable housing complexes. Filmore owns 56 of the units at the complexes, and MFLC Partners owns 108 of the units; but the two entities are otherwise similarly situated in this case, such that the facts applicable to one are applicable to the other. Accordingly, early on in the proceedings, the BTA consolidated their separate actions.

**April 11, 2024 Judgment**

Ultimately the matter proceeded to a bench trial before the BTA on September 13, 2023. On April 11, 2024, the BTA issued its judgment, which states:

> **IT IS ORDERED, ADJUDGED, AND DECREED** that Judgment is hereby rendered in favor of the Assessor, the City, [the Orleans Parish School Board], and the [Louisiana Tax Commission] and against Filmore and MFLC [Partners] dismissing the Petitioners' claims. Petitioners are not entitled to claim the 21(A) Exemption on the Filmore I and Filmore II apartment complexes for the 2022 Tax Year.

> **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that there be Judgment in favor of the Respondents and against the Petitioners authorizing the Respondents to retain and distribute the amounts paid under protest in these consolidated matters.

The BTA also issued reasons for judgment, which stated in pertinent part:

> In this case, almost all of the units at the Property are PBV units and "tax Credit" units. An appeal from the Board's decision in this case would lie with the Fourth Circuit. In *Abundance Square*, the Fourth Circuit clearly held that PBV units are not subject to the 21(A) Exemption. Further, since all of the units in Abundance Square were stated to be tax credit units, it follows that a unit is not exempt by virtue of being both a PBV unit and a tax credit unit. Thus, Petitioners

10

cannot qualify for the 21(A) Exemption, unless they show that they undertook significantly greater restrictions on the Property than those imposed by the HAP Contracts and the [Tax Credit Regulatory Agreements].

. . . .

Mirabeau and the Petitioners in this case have contracts with public agencies and they operate for a charitable purpose, but they are not so restricted as to become extensions of public entities. Their claim depends on all of their contracts functioning as an integrated financing plan. This includes their organizational documents, which are essentially private contracts. Finally, it should be noted that the Constitution provides a separate exemption for property owned by [a] charitable non-profit entity that meets other particular criteria.

Accordingly, the Board holds that Petitioners are not entitled to claim the 21(A) Exemption. PBV units and Tax Credit housing units are not exempt under *Abundance Square* and [2018] *Filmore* . . . . Petitioners are not restricted to operating as extensions of a public entity, and their claim is inextricably intertwined with private contracts. Therefore, Petitioners are not entitled to claim the 21(A) Exemption on the Property for the 2022 Tax Year and Judgment will be rendered in favor of the Assessor.

Thereafter, Taxpayers' timely appeal of the BTA's judgment followed.

## ASSIGNMENTS OF ERROR

In their brief to this Court, the Taxpayers assert two assignments of error.

Specifically, they contend:

1.  The [BTA] disregarded longstanding precedent and erroneously held that, to be exempt pursuant to La. Const. art. VII, § 21(A), the PBV units must operate as "extensions of a public entity."

2.  The [BTA] erroneously held that, for the § 21(A) exemption to apply, the exemption cannot be too "inextricably intertwined with private contracts."

We begin our discussion of the issues presented herein with the standard of review applicable to this matter.

## DISCUSSION

## <u>Standard of Review</u>

Louisiana Revised Statutes 47:1435 provides the courts of appeal with exclusive jurisdiction to review the decisions or judgments of the BTA. When an appellate court reviews a decision issued by the BTA, the review must be "rendered upon the record as made before the BTA and is limited to facts on the record and questions of law." *Ciervo v. Robinson*, 2020-1106, p. 3 (La. App. 1 Cir. 4/16/21), 323 So.3d 893, 896. The Louisiana First Circuit Court of Appeal has explained the appellate court should accept the BTA's findings of fact if "there is substantial evidence in the record to support them" and should not set aside the findings of fact "unless they are manifestly erroneous in view of the evidence on the entire record." *Id.* (citing *R & B Falcon Drilling USA, Inc. v. Sec'y, Dep't of Revenue*, 2009-0256, pp. 3-4 (La. App. 1 Cir. 1/11/10), 31 So.3d 1083, 1085). *See also Barfield v. Bolotte*, 2015-0847, p. 5 (La. App. 1 Cir. 12/23/15), 185 So.3d 781, 785 (citing *Crawford v. Am. Nat'l Petroleum Co.*, 2000-1063, p. 6 (La. App. 1 Cir. 12/28/01), 805 So.2d 371, 377); *Bridges v. Offshore Drilling Co.*, 2010-2214, p. 7 (La. App. 1 Cir. 7/18/11), 69 So.3d 738, 742 (citation omitted). Per La. R.S. 47:1435(C), if the BTA's judgment "is manifestly erroneous on the facts considering the record as a whole," then the appellate court has the power "to modify, or to reverse the decision or judgment of the board, with or without remanding the case for further proceedings."

When "the assignments of error reflect that the main issue involves a purely legal question regarding the proper interpretation of a statute" though, then the appellate court reviews the matter *de novo*, thereby giving no deference to the BTA's factual findings or legal conclusions. *Barfield*, 2015-0847, p. 5, 185 So.3d

at 785. If the case presents a question of law and the BTA "has correctly applied the law and has adhered to the correct procedural standards," then the appellate court should affirm the BTA's judgment. *Ciervo*, 2020-1106, p. 3, 323 So.3d at 896. *See also Barfield*, 2015-0847, p. 6, 185 So.3d at 785 (citing *Crawford*, 2000-1063, p. 6, 805 So.3d at 377); *Bridges*, 2010-2214, p. 7, 69 So.3d at 742 (citing *R&B Falcon Drilling USA, Inc.*, 2009-0256, p. 4, 31 So.3d at 1085). According to La. R.S. 47:1435(C), however, "if the decision or judgment of the board is not in accordance with law" then the appellate court has the power "to modify, or to reverse the decision or judgment of the board, with or without remanding the case for further proceedings." *See also Ciervo*, 2020-1106, pp. 3-4, 323 So.3d at 896 (holding that if the BTA does not correctly apply the law, then the appellate court may reverse or modify the judgment without the need for remand (citing *Bannister Props., Inc. v. State*, 2018-0030, 0031, 0032, 0033, p. 8 (La. App. 1 Cir. 11/2/18), 265 So. 3d 778, 785)).

**<u>Review of the Judgment, Not the Reasons for Judgment</u>**

As quoted previously, in their assignments of error Taxpayers contend the BTA erred by holding "that to be exempt pursuant to La. Const. art. VII, § 21(A), the [Section 8] PBV units must operate as 'extensions of a public entity'" and "cannot be too 'inextricably intertwined with private contracts.'" Both of these phrases—"extensions of a public entity" and "inextricably intertwined with private contracts"—come from the BTA's written reasons for judgment.

As this Court has previously explained, "A judgment and reasons for judgment are two separate and distinct documents." *Safford v. New Orleans Fire Dep't*, 2023-0495, p. 28 (La. App. 4 Cir. 2/1/24), 384 So.3d 909, 930 (citing *McDuffie v. State Farm Mut. Auto. Co.*, 2019-344, p. 5 (La. App. 5 Cir. 12/30/19),

13

287 So.3d 899, 903). An appellant seeks an appeal of the trial court's final judgment, not the trial court's written reasons for judgment. *Id.* Accordingly, if the appellate court determines the "'trial court's reasons for judgment are flawed, but the judgment is correct,' then 'the judgment controls.'" *Id.* at p. 29, 384 So.3d at 930 (citing *McDuffie*, 2019-344, pp. 5-6, 287 So.3d at 903-04). The reason for this rule is that an appellate court's inquiry and analysis focus on "the result of the judgment rather than the reasons." *Id.* (quoting *Dileo v. Horn*, 2015-684, p. 27 (La. App. 5 Cir. 3/16/16), 189 So.3d 1189, 1208). The rationale behind this longstanding principle is that when the trial court provides written reasons, these simply "set forth the basis for the [trial] court's holding and are not binding." *Id.* (citing *McDuffie*, 2019-344, p. 5, 287 So.3d at 903). Thus, the "reasons for judgment are not controlling and do not constitute the judgment of the [trial] court." *Id.* (quoting *Theresa Seafood, Inc. v. Berthelot*, 2009-0814, p. 7 (La. App. 4 Cir. 3/10/10), 40 So.3d 132, 137).

In light of the foregoing, our focus in the rest of the discussion will not be on the Taxpayers' assertions the BTA incorrectly held the units in question must operate as "extensions of a public entity" and "cannot be too inextricably intertwined with private contracts." Rather, we focus our inquiry more generally on whether Taxpayers demonstrated the Section 8 PBV units are entitled to the exemption.

**Whether the Taxpayers Are Entitled to the Exemption**

HUD recognizes three types of low-income housing units under three different programs: public housing units; the Section 8 PBV program, where rental

assistance is tied to specific units in a property;[4] and the Section 8 Housing Choice

Voucher ("HCV") program, which is a tenant-based program (i.e., the voucher

moves with the tenant).[5] These latter two programs—PBV and HCV—are both

sometimes referred to as Section 8, but they are distinct.[6] As explained on HANO's

website:[7]

> Under the tenant-based housing choice voucher program, HANO issues an eligible family a voucher and the family selects a unit of its choice. If the family moves out of the unit, the contract with the owner ends and the family can move with continued assistance to another unit. Under the project-based voucher program, HANO enters into an assistance contract with the owner for specified units and for a specified term. HANO refers families from its PBV site waiting list to the project owner to fill vacancies. Because the assistance is tied to the unit, a family who moves from the project-based unit does not have any right to continued housing assistance. However, they may be eligible for a tenant based voucher when one becomes available.

On appeal to this Court, the Taxpayers challenge the BTA's decision with respect

to their Section 8 PBV Units only (the dwelling units at the Property that are

covered by all five agreements) and do not challenge the BTA's decision as to the

other units (the units at the Property that are covered by the LURA, Tax Credit

---

[4] This Court can take judicial notice of government websites. *Bankers Ins. Co. v. EMIII Holdings, LLC*, 2024-0386, p. 1 (La. App. 4 Cir. 12/16/24), ___ So.3d ___, ___, 2024 WL 5116650, at *1 n.1 (citation omitted). Accordingly, we take judicial notice of the description of the Section 8 PBV program on HUD's website. *Rental Assistance Demonstration: Fact Sheet #10: The Difference Between Project-Based Vouchers and Project-Based Rental Assistance*, U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, hud.gov.

[5] We take judicial notice of HUD's website for this information about the HCV program. See *Housing Choice Vouchers Fact Sheet*, U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, https://www.hud.gov/topics/housing_choice_voucher_program_section_8.

[6] We take judicial notice of a report prepared by the Congressional Research Service for the information in the block quote. Maggie McCarty, *An Overview of the Section 8 Housing Programs: Housing Choice Vouchers and Project-Based Rental Assistance*, CONGRESSIONAL RESEARCH SERVICE, https://crsreports.congress.gov/product/pdf/RL/RL32284 (updated Feb. 7, 2014).

[7] We take judicial notice of HANO's website for the information in this block quote. *Affordable Housing: Project-Based Voucher Program*, HOUSING AUTHORITY OF NEW ORLEANS, https://www.hano.org/project-based-voucher-program/.

Agreement, Road Home Agreement, and HOME Agreement, but not the HAP Contract). As such, this appeal only concerns the Section 8 PBV Units. Thus, we must determine whether Taxpayers proved the Section 8 PBV units, which are encumbered by all five agreements, qualify for the *ad valorem* tax exemption.

As this Court has previously held, "[e]xemptions from taxation are strictly construed" because "an exemption [is] an exceptional privilege" that must be clearly, unequivocally, and affirmatively established. *Filmore Parc Apartments II*, 2016-0568, p. 4, 212 So.3d at 624 (quoting *Abundance Square Assocs., L.P.*, 2010-0324, p. 5, 62 So.3d at 263). Because an exemption is such an exceptional privilege, the taxpayer seeking the exemption bears a "stringent burden . . . to overcome the judicial fundamental principle that 'to doubt is to deny the exemption.'" *S. Yacht Club v. Zeno*, 2012-1309, p. 10 (La. App. 4 Cir. 3/27/13), 112 So.3d 942, 948 (quoting *Sherwood Forest Country Club v. Litchfield*, 2008-0194, p. 6 (La. 12/19/08), 998 So.2d 56, 61). Moreover, for this reason, "Louisiana jurisprudence has consistently held that constitutional and statutory grants of exemption from taxation must be strictly construed in favor of the taxing body and against the taxpayer desiring the exemption." *Id.* (citing *Metairie Country Club v. La. Tax Comm'n*, 2003-538, p. 5 (La. App. 5 Cir. 10/28/03), 860 So.2d 165, 167-68). Thus, in this case, the Taxpayers bore the burden of establishing they were entitled to the *ad valorem* tax exemption found in La. Const. art. VII, § 21(A).

The Taxpayers seek exemption from *ad valorem* taxation for the Section 8 PBV units under La. Const. art. VII, §21, which provides:

> Section 21. In addition to the homestead exemption provided for in Section 20 of this Article, the following property and no other shall be exempt from ad valorem taxation:

16

(A) Public lands and other public property used for public purposes.

In interpreting this provision, this Court has outlined a two-pronged test for determining whether the exemption from *ad valorem* taxation applies to a particular property.

The first prong is a determination as to whether the property is publicly or privately owned. *Filmore Parc Apartments II*, 2016-0568, pp. 4-5, 212 So.3d at 624. Even if the property is not publicly owned, one must move onto the second prong of the test because "[t]he Louisiana Supreme Court [has] acknowledged that property can 'vest' in the public even though the 'title be not in the public.'" *Id.* (quoting *Abundance Square Assocs., L.P.*, 2010-0324, p. 5, 62 So.3d at 264). That is, Louisiana jurisprudence has held that "ownership alone is not the determining factor and that privately owned property may be dedicated to public use to attain tax exempt status." *Id.* at p. 5, 212 So.3d at 625 (quoting *Abundance Square Assocs., L.P.*, 2010-0324, p. 10, 62 So.3d at 266).

Accordingly, the second prong of the test requires a determination as to whether the property is used for a public purpose. *Id.* (quoting *Slay*, 473 So.2d at 53). A property has a public purpose if it "is either (1) dedicated and open to the public, or (2) used in a way that benefits the general public." *Bd. of Comm'rs of Port of New Orleans v. City of New Orleans*, 2015-0768, pp. 5-6 (La. App. 4 Cir. 3/16/16), 186 So.3d 1282, 1285-86 (citing *St. Bernard I, LLC v. Williams*, 2012-0372, pp. 7-9 (La. App. 4 Cir. 3/13/13), 112 So.3d 922, 927-28). In the low income housing context, a unit's status as Section 8 PBV housing alone is insufficient to meet the public purpose requirement of La. Const. art. VII, § 21. *See Abundance Square Assocs., L.P.*, 2010-0324, p. 12, 62 So.2d at 267 (affirming the trial court's

17

denial of the *ad valorem* tax exemption to Section 8 PBV units). However, where there are additional "restrictions . . . placed upon [a] [p]roperty in furtherance of the mission of providing affordable housing for 'low- and very low-income residents in New Orleans,'" then these restrictions *may* satisfy the second prong of the test so as to render Section 8 PBV units exempt from *ad valorem* taxation. *Filmore Parc Apartments II*, 2016-0568, p. 8, 212 So.3d at 626. Additionally, in determining whether the property has a public purpose, the courts can consider "[h]ow the revenue derived from private property is used." *Id.* at p. 5, 212 So.3d at 625 (quoting *Abundance Square Assocs., L.P.*, 2010-0324, p. 10, 62 So.3d at 266). If a property, such as an housing complex, has both non-exempt and exempt units, then revenue from the exempt units must be deposited into a separate escrow account to ensure that it is used "for the sole purpose of operation and maintenance of *these* units." *Filmore Parc Apartments II*, 2018-0359, p. 23, 318 So.3d at 732 (emphasis added). *See also Abundance Square*, 2010-0324, p. 11, 62 So.3d at 267 (affirming the exemption for "public housing" units at the same housing complex that had non-exempt units because the property owners maintained a separate escrow to ensure that any profits generated by the rental of the public housing units were used solely for the benefit of the public housing units and not also used for the benefit of the non-exempt units).

Looking at the first prong of the test, there is no dispute in this matter that the Property is privately owned via the partnerships in commendam. Also, although 2017 *Filmore* concerned a different tax year—2014—the property is the same, and Taxpayers correctly note in their brief that "this Court [previously] held that the [Section 8] PBV units . . . are privately owned." *See Filmore Parc Apartments II*, 2016-0568, p. 5, 212 So.3d at 624. In their present appeal, the

18

Taxpayers do not dispute this prior holding. Rather, they argue that despite the property's private ownership, they are still entitled to the *ad valorem* tax exemption for the Section 8 PBV units because they have dedicated those to a public use.

Next, we consider the second prong of the test and determine whether, despite their private ownership, the Section 8 PBV units are entitled to the exemption because they are dedicated to a public purpose. The disputed units' status as Section 8 PBV alone is insufficient to qualify for the exemption per *Abundance Square. Assocs., L.P.*, 2010-0324, p. 12, 318 So.3d at 267. However, Taxpayers argue their Section 8 PBV units are further encumbered than the Section 8 PBV units in *Abundance Square Associates, L.P.*, such that they are analogous to the exempt public housing units in *Abundance Square Associates, L.P.* instead. That is, Taxpayers explain all of the units at their property have restrictions on how earned income can be used because of Taxpayers' receipt of a federal Community Development Block Grant ("CDBG Program") loan funded by HUD and a HOME Investment Partnership Program ("HOME Program") loan also funded by HUD. Specifically, Taxpayers assert the CDBG Program requires that any revenue must go toward "maintenance and operation of the Property," while the HOME Program requires them to report revenue to the City of New Orleans (with whom the HOME Program agreement was made), which can then require return of the revenue or use of the revenue only for eligible costs. Taxpayers are correct that this Court held in 2017 *Filmore* that additional "restrictions . . . placed upon [a] [p]roperty in furtherance of the mission of providing affordable housing for 'low- and very low-income residents in New Orleans,'" *may* satisfy the second prong of the test so as

19

to render Section 8 PBV units exempt from *ad valorem* taxation. *Filmore Parc Apartments II*, 2016-0568, p. 8, 212 So.3d at 626.

Taxpayers also correctly state in their briefs that *Abundance Square Associates L.P.* demonstrates how La. Const. art. VII, § 21(A) can be applied to affordable housing: "[w]hen (1) the units are dedicated to use solely by HANO, and (2) the revenue for those units is restricted to use solely for maintenance and operation of *those* units, the units are exempt." (Emphasis added.) Regarding this latter holding, in *2018 Filmore*, this Court similarly noted with regard to what it found to be a genuine issue of material fact at that phase of the proceedings, that in housing complexes with potentially exempt and definitely non-exempt units, it is important to know whether the "revenue generated from [the potentially exempt] units" was deposited "into an escrow account, as mandated, for the sole purpose of operation and maintenance of *these* units." 2018-0359, p. 23, 318 So.3d at 732 (emphasis added.) However, Taxpayers' own briefs and admission specifically show how they fail to adhere to that rule from *Abundance Square Associates, L.P.* and 2018 *Filmore*. That is, Taxpayers admit in their briefs to this Court that they do not have a separate escrow account for any revenue generated by the Section 8 PBV units. Instead, Taxpayers assert they need not have a separate escrow account: Taxpayers write that "[they] have no separate accounts for any unrestricted, unaudited revenue from the [Section 8] PBV units because all of [the Property's funds are subject to Program Income restrictions and thus dedicated to the maintenance and operation of the Property." In sum, Taxpayers' argument is that because all of the units at the Property—even the ones for which they do not seek the *ad valorem* tax exemption—have these encumbrances from the CDBG Program and the HOME Program thereby requiring all revenue to return to the

Property for maintenance and operation, there is no need for a separate escrow account for any revenue that comes from the Section 8 PBV units.

This argument is incorrect. In *Abundance Square Associates, L.P.*, under their regulatory and operating agreements, the property owners had to maintain a separate escrow account for any profit they might earn from the exempt public housing units to ensure that any profits generated by the public housing units were used solely for the benefit of the public housing units and not also used for the benefit of the non-exempt units. 2010-0324, p. 11, 62 So.3d at 267. By so doing, this structural arrangement guaranteed that no profit from the exempt public housing units inured to the benefit of the non-exempt units. Accordingly, the property owners could not get the benefit of the exemption for the public housing units while simultaneously using profits generated therefrom to help the non-exempt units. In the matter *sub judice*, by contrast, Taxpayers have admitted that they do not have a separate escrow account for any revenue generated by the Section 8 PBV units, such that there is what amounts to a comingling of revenue generated by the Section 8 PBV units with revenue generated by the other, non-exempt units. As such, this structural arrangement means that revenue garnered by the Section 8 PBV units can go to operation and maintenance of the non-Section 8 PBV/non-exempt units. Assuming arguendo that the Section 8 PBV units generate 10% of the overall revenue at the property, Taxpayers' lack of a separate escrow account means that the Taxpayers do not ensure that the 10% goes back specifically to the Section 8 PBV units. Rather, the non-Section 8 PBV/non-exempt units might receive back 99% of the overall revenue in operation and maintenance, while the Section 8 PBV units only receive 1% back in operation and maintenance even though they generated 9% more revenue than that. Essentially,

the Section 8 PBV units might not receive their fair and proportional share of the revenue. To grant the exemption to the Taxpayers in this case would allow them to receive the benefit of the exemption and the ability to use profits generated therefrom to help the non-exempt units at the Property, thereby diminishing the public purpose of the Section 8 PBV units. Thus, while the Taxpayers correctly state in their briefs that *Abundance Square Associates, L.P.* holds that revenue from units must be restricted to use solely for maintenance and operation of those units for the exemption, the Taxpayers do not actually adhere to that because revenue from the Section 8 PBV units for which they seek the *ad valorem* tax exemption is not restricted to use solely for these Section 8 PBV units.

By failing to separate the revenue earned by the Section 8 PBV units, the Taxpayers have not established the Section 8 PBV units align with the exempt public housing units in *Abundance Square Associates, L.P.* so as to bring them under the purview of the exemption. Thus, we pretermit discussion on whether the various agreements and encumbrances on the Section 8 PBV units mean these units have a public purpose. We do so because even if were to so find, Taxpayers did not meet their stringent burden of clearly and unequivocally establishing entitlement to the *ad valorem* tax exemption for the Section 8 PBV units in question because of their failure to establish a separate escrow account. Accordingly, the BTA correctly concluded Taxpayers were not entitled to the *ad valorem* exemption for the 2022 tax year.

## CONCLUSION

For the foregoing reasons, we affirm the BTA's April 11, 2024 judgment, which dismissed the claims asserted in Taxpayers' respective Petitions; ordered that Taxpayers are not entitled to claim the La. Const. art. VII, § 21(A) exemption

on the Filmore I and Filmore II apartment complexes for the 2022 tax year; and authorized Assessor Williams to retain and distribute the amounts paid by Taxpayers under protest in response to their 2022 tax bills.

**AFFIRMED**